# UNITED STATES COURT OF APPEALS
# FOR THE EIGHT CIRCUIT

_____

### No. 22-2694
_____

**Karen Backues Keil, Plaintiff-Appellee**

v.

**Edward Bearden, Defendant-Appellant**
_____

### No. 22-2697
_____

**Lynnsey Christie Betz, Plaintiff-Appellee**

v.

**Edward Bearden, Defendant-Appellant**
_____

### No. 22-2698
_____

**Ashley Olsen Zieser, Plaintiff-Appellee**

v.

**Edward Bearden, Defendant-Appellant**
_____

### No. 22-2699
_____

**Trenady George, Plaintiff-Appellee**

**v.**

**Edward Bearden, Defendant-Appellant**

---

**Appeal from the United States District Court,
Western District of Missouri
The Honorable Beth Phillips, U.S. District Chief Judge
Nos. 18-cv-06074-BP, 18-cv-06079-BP, 18-cv-06103-BP, 19-cv-06161-BP**

---

**APPELLANT'S BRIEF**

---

> **ERIC S. SCHMITT**
> **Attorney General**
>
> **NICOLAS TAULBEE**
> **Assistant Attorney General**
> **Missouri Bar No. 61065**
> **615 East 13th Street, Suite 401**
> **Kansas City, Missouri 64106**
> **Telephone: (816) 889-5000**
> **Facsimile: (816) 889-5006**
> **Nicolas.Taulbee@ago.mo.gov**
> ***Attorneys for Appellant***

## Summary of the Case and Request for Oral Argument

This is an Eighth Amendment case under § 1983 related to the conditions of confinement at a female prison in Missouri. Karen Keil, Lynnsey Betz, Ashley Zieser, and Trenady George claim that Correctional Officer Edward Bearden raped or sexually assaulted them while they were incarcerated at Chillicothe Correctional Center. Bearden denies that he had sexual contact with any inmate at CCC.

The district court consolidated the four cases for trial over Bearden's objection. A jury then found in favor of Keil, Betz, Zieser, and George. The jury awarded each individual $3.5 million in compensatory damages and $1.5 million in punitive damages. This appeal follows.

The issues in these appeals are whether the consolidation of these four cases, alleging sexual assault or rape, unfairly prejudiced Bearden; whether the verdict was against the weight of the evidence; and whether remittitur was appropriate because the jury award was unreasonable on the facts. The district court denied Bearden's motion for new trial on each of these issues. Appellant requests 10 minutes of oral argument to address these issues.

i

# Table of Contents

Summary of the Case and Request for Oral Argument ..................i

Table of Contents.................................................... ii

Table of Authorities................................................iii

Jurisdictional Statement ............................................1

Statement of the Issues.............................................2

Statement of the Case ..............................................3

Summary of the Argument.......................................10

Argument...........................................................11

    I.    Consolidation caused unfair prejudice ...........................11

    II.   Denial of admission of Plaintiff's Exhibit 12 affected Bearden's substantial rights.............................15

    III.  Remittitur was appropriate because the jury award was excessive .................................................18

Conclusion.........................................................19

Certificates of Compliance and Service.........................20

ii

# Table of Authorities

**Cases**

*Dindinger v. Allsteel, Inc.*,

    853 F.3d 414 (8th Cir. 2017) ..................................................... 2, 15

*Eckerberg v. Inter-state Studio & Publ'g Co.*,

    860 F.3d 1079 (8th Cir. 2017) .................................................. 2, 18

*Enterprise Bank v. Saettele*,

    21 F.3d 233 (8th Cir. 1994) ...................................................... 2, 11

*Horizon Asset Management Inc. v. H & R Block, Inc.*,

    580 F.3d 768 (8th Cir. 2009) ................................................. 2, 11-12

*Miller v. Huron Regional Medical Center*,

    936 F.3d 841 (8th Cir. 2019) .................................................. 2, 18

**Statutes**

28 U.S.C. § 1291 .......................................................................... 1

**Rules**

Fed. R. Civ. P. 42 ..................................................................... 11

Fed. R. Civ. P. 61 ..................................................................... 15

Appellate Case: 22-2694    Page: 5    Date Filed: 10/05/2022 Entry ID: 5204856

## Jurisdictional Statement

These are appeals from amended judgments of the United States District Court for the Western District of Missouri. App. 53, R. Doc. 209 (*Keil*); App. 281, R. Doc. 66 (*Betz*); App. 316 R. Doc. 66 (*Zieser*); and App. 359, R. Doc. 103 (*George*). The district court entered the judgments following a jury verdict, App. 49-52, R. Doc. 199, on April 28, 2022, and the order denying Appellant's motion for new trial, App. 229, R. Doc. 224, on July 6, 2022.

This actions were filed under 42 U.S.C. § 1983, and the district court had jurisdiction under 28 U.S.C. § 1331. Jurisdiction over final decisions of the U.S. District Courts lies in the appellate courts. Thus, jurisdiction lies in the United States Court of Appeals for the Eighth Circuit. 28 U.S.C. § 1291. Appellant timely filed his notices of appeal on August 5, 2022.[1] App. 247, R. Doc. 225 (*Keil*); App. 282, R. Doc. 74 (*Betz*); App. 317, R. Doc. 74 (*Zieser*); App. 360, R. Doc. 111 (*George*).

---

[1] Because the cases had been consolidated for post-trial proceedings, Appellant initially filed one notice of appeal in the *Keil* case. In an abundance of caution, he subsequently filed notices of appeal in the other three cases.

1

## Statement of the Issues

1.  Whether consolidation of four cases, alleging violent sexual assault, caused unfair prejudice to Bearden.

    - *Enterprise Bank v. Saettele*, 21 F.3d 233 (8th Cir. 1994)

    - *Horizon Asset Management Inc. v. H & R Block, Inc.*, 580 F.3d 768 (8th Cir. 2009)

2.  Whether the denial of the admission of the phone call between George and Bearden affected Bearden's substantial rights.

    - *Dindinger v. Allsteel, Inc.*, 853 F.3d 414 (8th Cir. 2017)

3.  Whether the denial of remittitur was a manifest abuse of discretion

    - *Miller v. Huron Regional Medical Center*, 936 F.3d 841 (8th Cir. 2019)

    - *Eckerberg v. Inter-state Studio & Publ'g Co.*, 860 F.3d 1079 (8th Cir. 2017)

2

## **Statement of the Case**

Keil, Betz, Zieser, and George filed these actions under 42 U.S.C. §1983, alleging that Bearden violated their Eighth Amendment rights. App. 1-27, R. Doc. 1 (*Keil*); App. 249-258, R. Doc. 1 (*Betz*); App. 284-293, R. Doc. 1 (*Zieser*); and App. 319-336, R. Doc. 1 (*George*). Before trial, Keil, Betz, Zieser, and George, sought to consolidate the cases for trial. App. 28-39, R. Doc. 84. Bearden opposed that motion. App. 40-43, R. Doc. 86. Over Bearden's objection, the district court consolidated the cases. App. 46-48, R. Doc. 89.

Keil was at Chillicothe Correctional Center from July 19, 2011 to February 1, 2017. Tr. 254:24-255:1. Keil testified that Bearden raped her approximately 20 times. Tr. 247:24-248:1. She also testified that Bearden sexually assaulted her ten to twelve times. Tr. 248:4-6. The first sexual assault occurred in the daytime. Tr. 267:1-3. Keil testified that the rapes occurred in a back room within the housing unit where offender property was stored. Tr. 217:9-24. Bearden escorted Keil past the caseworkers' officers, other counselor or institutional parole officer's offices. Tr. 218:21-219:6. She testified that Bearden raped her in the

3

same property room in different housing units. Tr. 220:23-221:9. Keil testified that the rapes occurred from 2011 to 2016. Tr. 268:22-24.

Betz was at Chillicothe Correctional Center at the end of 2014 until July of 2016. Tr. 377:13-25. Betz testified that her first interaction with Bearden occurred when she worked at vocational when her boss was on vacation. Tr. 344:16-23. She cleaned the vocational building. Tr. 345:18-21. She began working in the vocational education building in April 2015. Tr. 379:6-7. She worked for CO Gilgour. Tr. 346:10-11. CO Gilgour was gone for two weeks on vacation when the sexual assault incidents occurred. Tr. 350:21-351:1. This was in the spring of 2016. Tr. 379:8-10. Betz testified that the assaults took place over three or four days. Tr. 351:2-4. She testified that Bearden grabbed her vagina as he passed her in a doorway. Tr. 359:2-9. She also testified that Bearden followed her into a mop closet and digitally penetrated her. Tr. 351:20-354:3.

Zieser was at Chillicothe Correctional Center from December 2014 through May 2017. In December 2015, Zieser worked as a porter and cleaned the administrative building from 5:00 pm to 8:00 pm. Tr. 49:18-50:7. Three women went to the administrative building at night to clean

4

the building. Tr. 50:23-51:1. At that time, the administrative building was not full of people. Tr. 50:8-10. She testified that Bearden was there at that time though. Tr. 50:11-12. Bearden was the guard supervising the cleaning detail. Tr. 51:2-4. Zieser testified that Bearden told her to empty the trash in a small breakroom. Tr. 54:10-19. Zieser claimed that, when she went to get the trash, Bearden came up behind her and digitally penetrated her. Tr. 54:10-22. Zieser testified that this happened a second time in the administrative building. Tr. 59:3-11. Zieser testified that the first two incidents happened within a week of each other. Tr. 60:9-12. Zieser testified about a third incident that occurred one evening right after the second incident in the locker room in the administrative building. Tr. 60:13-25. She testified that Bearden came into the locker room, grabbed her hair, and told Zieser that she was going to perform oral sex on him, but another inmate was also in the locker room. Tr. 61:23-62:6. That was the last encounter Zieser had with Bearden. Tr. 63:5-7. Zieser testified that all of the incidents with Bearden occurred during the night shift. Tr. 74:12-17.

George was at Chillicothe Correctional Center from June 2015 until November 17, 2017. Tr. 170:24-171:3. George took cosmetology

classes in the vocational building. Tr. 125:20-126:13. Miss Gilgour was the corrections officer assigned to the vocational building. Tr. 126:14-19. George testified that Bearden first touched her about a month or so after she started in the cosmetology program. Tr. 135:1-5. She testified that Bearden sexually assaulted her when he substituted for CO Gilgour in the vocational building. Tr. 136:14-17. She testified that she was required to get cleaning supplies from a storage closet to clean the cosmetology classroom. Tr. 136:18-25. She testified that Bearden escorted her to that storage room. Tr. 137:12-16. She testified that in that storage room Bearden forced her to perform oral sex on him. Tr. 138:22-140:14. She testified that it happened again in the same way in the same place. Tr. 141:12-17. She testified that the assaults continued from November 2017 through the beginning of September 2017. Tr. 143:3-7. She testified that Bearden forced her to perform oral sex 45 to 50 times. Tr. 145:6-9. During this time, George called Bearden on the phone. Tr. 148:24-25. George testified that she called Bearden because she felt that he threatened her to make the call. Tr. 149:1-18. George made one phone call to Bearden. Tr. 153:9-13. She also testified that she called because it was a recorded phone call. Tr. 188:17-189:3.

6

Teri Dean also testified at trial and accused Bearden of sexually assaulting her. Tr. 305:2-5. She testified that he assaulted her four to five times in a storage closet in housing unit 7. Tr. 309:21-310:2. She testified that Bearden assaulted her in the barbershop. Tr. 311:17-23. She testified that Bearden assaulted her eight to ten times in the recreation utility closet. Tr. 312:14-18, 314:2-4.

Dr. Melissa Piasecki testified as an expert for each individual about emotional or psychological damages. Tr. 481:12-586:13. Dr. Piasecki personally interviewed Keil, Betz, and Zieser, but not George. Tr. 523:524:20, 586:8-13. She testified that, in her opinion, Zieser's symptoms and description of experiences were consistent with being sexually assaulted by a guard while incarcerated. Tr. 512:20-513:1. She testified that Zieser has post-traumatic stress disorder. Tr. 513:2-4. Dr. Piasecki testified that, in her opinion, George's description of her experiences were consistent with having been sexually assaulted by a guard while incarcerated. Tr. 515:10-17. She also testified that Keil's symptoms and description of her experience was consistent with being sexually assaulted by a guard while incarcerated. Tr. 517:10-14. Dr. Piasecki testified that Keil had symptoms consistent with PTSD. Tr.

Appellate Case: 22-2694    Page: 12    Date Filed: 10/05/2022 Entry ID: 5204856

517:15-518:12. Similarly, Dr. Piasecki testified that Betz's symptoms and descriptions of her experiences were consistent with being sexually assaulted by a guard while incarcerated. Tr. 520:2-5. She also testified that Betz's symptoms were consistent with PTSD. Tr. 520:6-12. During Dr. Piasecki's testimony about Keil's symptoms, Zieser began audibly sobbing, so counsel approached, and the judge had Zieser step out of the courtroom. Tr. 518:13-519:6.

Bearden worked at Chillicothe Correctional Center from 2008 to 2018. Tr. 647:13-18. He testified about his duty assignments at Chillicothe Correctional Center. Tr. 651:15-656:2. Bearden was assigned to the second shift (7:00am to 3:00 pm) as a utility officer effective January 26, 2014. Tr. 655:3-14. Bearden testified that he did not sexually assault Keil, Betz, Zieser, or George. Tr. 646:2-3, 660:5-14. He testified that he did not sexually assault any woman at Chillicothe Correctional Center. Tr. 646:4-6, 660:15-17. On cross-examination, Bearden was questioned extensively about the phone call with George and a second phone call with another inmate. Tr. 667:22-683:19. On re-direct, Bearden offered a recording of the phone call into evidence. Tr. 707:14-710:24; 711:9-713:14. The district court sustained an objection

Appellate Case: 22-2694     Page: 13     Date Filed: 10/05/2022 Entry ID: 5204856

and denied admission of the recording. Tr. 711:9-713:14. Bearden's other witnesses were questioned about the phone call as well. Tr. 634:20-635:9 (McBee), 772:4-13 (Savage), and 805:7-24 (Dysart).

The jury returned verdicts against Bearden on April 28, 2022, and awarded Keil, Betz, Zieser, and George $3.5 million each in compensatory damages and $1.5 million each in punitive damages. App. 49-52, R. Doc. 199. The district court entered amended judgments following the jury verdict. App. 53, R. Doc. 209 (*Keil*); App. 281, R. Doc. 66 (*Betz*); App. 316, R. Doc. 66 (*Zieser*); and App. 359, R. Doc. 103 (*George*). The district court then denied Bearden's motion for new trial on July 6, 2022. App. 229, R. Doc. 224. Appellant timely filed his notice of appeal on August 5, 2022. App. 247, R. Doc. 225.

# Summary of the Argument

The district court abused its discretion in three ways: 1) consolidation of four cases that alleged violent sexual assault and rape prejudiced Bearden; 2) denial of the admission of the recording of the phone call affected Bearden's substantial rights; and 3) denial of remittitur because the verdict was excessive. Bearden opposed consolidation because it would result in undue prejudice with four accusers sitting at the table throughout the trial. Bearden also opposed consolidation because of the risk of juror confusion in determining which allegations and defenses fit with which accuser. Both of these concerns were realized at trial. Consolidation caused Bearden unfair prejudice.

The district court's denial of the admission of the recording of the phone call between Bearden and George affected Bearden's substantial rights. George testified about the phone call. Bearden's witnesses were all questioned about the phone call. On cross-examination, Bearden was questioned extensively about that phone call. Yet, on re-direct, the district court denied Bearden's request to play the phone call so that the jury could hear the content and tone. This was not harmless.

10

## Argument

Bearden sought a new trial in these consolidated cases because a new trial was necessary to prevent a miscarriage of justice. Bearden stood accused of the violent rape and sexual assault of four former inmates at Chillicothe Correctional Center. He denied those accusations, but each of the accusers sat at the table in front of the jury throughout the trial. The district court abused its discretion in three ways: 1) consolidation of four cases that alleged violent sexual assault and rape prejudiced Bearden; 2) denial of the admission of the recording of the phone call affected Bearden's substantial rights; 3) and denial of remittitur because the jury verdict was excessive.

## I. Consolidation caused unfair prejudice.

This Court reviews "a district court's decision to consolidate for an abuse of discretion." *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994). A district court may consolidate cases for trial when they involve "a common question of law or fact." Fed. R. Civ. P. 42(a). That means the district court may consolidate actions involving "common parties, overlapping legal issues, and related factual scenarios" unless the consolidation causes "unfair prejudice." *Horizon Asset Mgmt. Inc. v. H &*

11

*R Block, Inc.*, 580 F.3d 755, 768 (8th Cir. 2009). Bearden opposed the consolidation of these cases for two reasons: 1) the jury would see each plaintiff sitting in the courtroom, reacting to the evidence, throughout the course of the trial; and 2) consolidation risked confusing the jury about what evidence fits with his defenses to each allegation. Bearden's concerns were realized at the trial.

Bearden denied the accusations, but each of his accusers sat at the table in front of the jury throughout the trial. Keil, Betz, Zieser, and George reacted to each other's testimony, the testimony of other witnesses, and comforted one another in front of the jury. At one point, counsel had to approach and discuss the audible sobbing of Zieser during the expert's testimony about Keil with the judge in front of the jury. The district court had Zieser step out of the courtroom. If the cases had not been consolidated, Bearden may have faced the emotional testimony of each of the plaintiffs, but he would not have had an expert testifying about the damages of each of the plaintiffs or the emotional reaction to evidence about a different individual. The jury would not have witnessed the overly sympathetic scene. The decision to

12

consolidate the cases caused unfair prejudice to Bearden for that reason.

It also caused unfair prejudice to Bearden because the effect of the consolidation was a confused jury about what allegations fit with which plaintiff and which defenses fit with which allegations. Keil, Betz, Zieser, and George all testified about their individual allegations. None had information about the others' claims. Dean also testified solely about her accusations against Bearden. Thus, the crux of the case was a jury determination of credibility of each of the witnesses and Bearden.

Bearden had to defend against multiple allegations with uncertain dates and times, spanning a number of years. Because of the consolidation, Bearden had to disprove each of the accusations. Bearden offered testimony and documents that covered the period of 2013 through 2018, which was only necessary because of the consolidation. The jury had to sift through all of the information that Bearden submitted to try to determine what information fit with which accusations. This was no easy task.[2] Bearden admitted all of his bid

---

[2] Even counsel for the plaintiffs confused the facts presented at trial (and which accusations fit with which plaintiff) in her closing. Tr. 815:17-817:13.

Appellate Case: 22-2694    Page: 18    Date Filed: 10/05/2022 Entry ID: 5204856

sheets that showed his assignments during his time at Chillicothe, which showed that he was not permanently assigned to the evening shift after January 2014. Betz accused Bearden of assaulting her in the vocational education building during CO Gilgour's two-week vacation in 2016. Bearden admitted the shift supervisor logs for January 2013 through July 2018 and elicited testimony about the COs assigned to vocational education during that two-week vacation in the spring of 2016. Those same shift supervisor logs did not show that Bearden worked in vocational education once a week for a year in 2016 to 2017.

The jury had accusations from 2011 through 2018. But Betz's accusations occurred over three or four day and Zieser's occurred in one of two months. Keil's spanned a five-year period. George's accusations occurred for an entire year. The jury also had accusations that occurred in several housing units, in the administration building, in vocational education, and in the recreation building. The result was juror confusion.

The jury was unable to make an individual determination of liability in each case. Despite the differences in the individual accusations, the jury awarded Keil, Betz, Zieser, and George, the same

Appellate Case: 22-2694     Page: 19     Date Filed: 10/05/2022 Entry ID: 5204856

amount in actual damages--$3.5 million. Consolidation of these cases unfairly prejudiced Bearden.

## II. Denial of admission of Plaintiff's Exhibit 12 affected Bearden's substantial rights.

This Court reviews evidentiary rulings for abuse of discretion. *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017). This Court overturns evidentiary rulings only for "clear and prejudicial abuse of discretion." *Id.* (quoting *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009). A district court should grant a new trial based on an error in excluding evidence only if justice so requires, *i.e.,* the error must affect the "substantial rights" of a party. Fed. R. Civ. P. 61. A court should not grant a new trial for harmless errors. *Id.*

The error here was not harmless. George testified about a recorded telephone conversation that she had with Bearden. She testified that she had previously testified inaccurately about the contents of that conversation. She maintained that Bearden coerced her to make that call. The recorded phone call was not offered into evidence or played for the jury during plaintiffs' case-in-chief. During Bearden's case-in-chief, Bearden's other witnesses were questioned about the phone call—a call of which none of the witnesses had any knowledge.

15

Bearden was also cross-examined about the recorded phone call. 667:22-677:11. Bearden was questioned about his truthfulness about the call. Tr. 668:8-682:24. Bearden was also questioned about another phone call with an inmate that was not a plaintiff in this case. Tr. 677:12-680:1. He was repeatedly asked whether he told that individual to "stay wet." Tr. 678:1-680:1

On redirect of Bearden, Bearden attempted to offer the recorded phone call into evidence, so that the jury could hear the tone and content of the conversation. Tr. 707:14-710:24; 711:9-713:14. No party challenged the authenticity or foundation of the exhibit. Tr. 713:8-14. The plaintiffs objected to its admission, and the district court reviewed a transcript of the conversation, and then sustained the objection. Tr. 711:9-713:14. Bearden did an offer of proof to preserve the issue. Tr. 711:9-713:14. The Court noted that the transcript of the recorded phone call supported Bearden's characterization, so the admission would be improper bolstering of his testimony. Tr. 711:9-712:3. The Court indicated that Bearden could have sought admission of the recorded phone call during cross-examination of George for impeachment purposes. Tr. 712:18-713:7.

16

Bearden could have done so, but George partially acknowledged her inaccurate testimony on direct. Until the recorded phone call became a major focus of cross-examination during Bearden's case-in-chief, Bearden did not need to offer the recorded phone call. As the recorded phone call became more prominent, it became more important for the jury to hear the content of the call, as well as Bearden and George's tone during the call. After George testified that Bearden coerced her into making the phone call, Bearden testified that he had been untruthful about the phone call. Then, the jury heard testimony that the phone call was an egregious breach of Bearden's duty. The jury also heard evidence about another unplayed phone call that did not involve any of the women. Bearden was repeatedly questioned about whether he told the woman to "stay wet." No other evidence was offered about that woman or that phone call.

Bearden's substantial rights were affected because the jury did not hear the recorded phone call with George, including its contents and the tone of voices of the speakers, even as witnesses were continually questioned about it.

Appellate Case: 22-2694    Page: 22    Date Filed: 10/05/2022 Entry ID: 5204856

## III. Remittitur was appropriate because the jury award was excessive.

This Court reviews "the denial of a motion for remittitur or a new trial for a manifest abuse of discretion." *Miller v. Huron Reg'l Med. Ctr.*, 936 F.3d 841, 846 (8th Cir. 2019). A district court may order "a remittitur when it believes the jury's award is *unreasonable* on the facts." *Id.* (emphasis in original) (quoting *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002)). Remittitur is appropriate when the verdict "is so grossly excessive that 'there is a plain injustice or a monstrous or shocking result.'" *Eckerberg v. Interstate Studio & Publ'g Co.*, 860 F.3d 1079, 1087 (8th Cir. 2017) (quoting *Hudson v. United Sys. of Ark., Inc.*, 709 F.3d 700, 705 (8th Cir. 2013)). A district court looks to "the law of the forum state in weighing the excessiveness of a verdict." *Id.* (quoting *Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1019 (8th Cir. 2007)). "In Missouri, remittitur is available if 'the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages.'" *Id.* (quoting Mo. Rev. Stat. § 537.068).

The jury awarded each Plaintiff $3.5 million in compensatory damages. The plaintiffs' allegations of sexual assault were significantly

18

different in number and kind. Betz testified about one incident of digital penetration. Zieser testified about two incidents of digital penetration. Keil testified that she was raped twenty times and sexually assaulted at least ten other times. George testified that she was forced to perform oral sex 45 to 50 times. Yet, the jury awarded each of the plaintiffs the same amount for compensatory damages. The jury's award of $3.5 million in compensatory damages and $1.5 million in punitive damages for each plaintiff was unreasonable on the facts and grossly excessive. The district court decision was a manifest abuse of discretion.

## Conclusion

For these reasons, this Court should reverse the district court's order denying Appellant's motion for new trial.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

*/s/ Nicolas Taulbee*
Nicolas Taulbee, Missouri Bar No. 61065
Assistant Attorney General
615 East 13th Street, Suite 401
Kansas City, Missouri 64106
Telephone: (816) 889-5000
Facsimile: (816) 889-5006
Email:      Nicolas.Taulbee@ago.mo.gov
*Attorneys for Appellant*

19

## Certificate of Compliance and Certificate of Service

I certify this brief was produced using Microsoft Office Word 2010 using the proportionally-spaced Century Schoolbook in 14-point print size, and it contains 3,527 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that the brief has been scanned for viruses and is virus-free. All required privacy redactions have been made. The hard copies submitted to the clerk are exact copies of the CM/ECF submission.

I further certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system; that all participants in this case are registered CM/ECF users; and that service will be accomplished by the CM/ECF system.

*/s/ Nicolas Taulbee*
Assistant Attorney General

20