# In the United States Court of Appeals for the Eighth Circuit

KAREN KEIL, LYNNSEY BETZ, ASHLEY ZIESER, and TRENADY GEORGE,
*Plaintiffs-Appellees,*

v.

EDWARD BEARDEN,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Missouri
Case No. 5:18-cv-06074-BP (The Hon. Beth Phillips)

## CORRECTED BRIEF OF PLAINTIFFS-APPELLEES

JOHN J. AMMANN
SUSAN W. MCGRAUGH
BRENDAN D. ROEDIGER
ST. LOUIS UNIVERSITY SCHOOL OF LAW
100 N. Tucker Boulevard, Suite 704
Saint Louis, MO 63101

JENIFER C. SNOW
LAW OFFICE OF JOAN M. SWARTZ
3348 Greenwood Boulevard
Saint Louis, MO 63143

JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
jon@guptawessler.com

JESSIE GARLAND*
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336

*Eighth Circuit admission pending

November 10, 2022                    *Counsel for Plaintiffs-Appellees*

## SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT

The defendant, Edward Bearden, raped or otherwise forcibly penetrated four women while he was a correctional officer and they were inmates at a prison in rural Missouri. Each woman has experienced severe psychological trauma as a result, which will last for years. After a four-day trial, a jury found Bearden responsible, awarding each woman the same amount of compensatory and punitive damages.

Bearden requested a new trial. He argued that consolidating the cases for trial caused him unfair prejudice, that the district court's exclusion of a single piece of evidence violated his substantial rights, and that the damages awards were grossly excessive. In a thoughtful and thorough opinion, the district court rejected each of these arguments and declined to disturb the jury's awards.

At issue on appeal is whether the district court manifestly abused its discretion in doing so. It did not. The district court carefully explained why neither of Bearden's theories of unfair prejudice came remotely close to outweighing the obvious benefits of consolidation, why the one piece of evidence was properly excluded and wouldn't have changed the outcome anyway, and why the damages awards are reasonable.

Because the district court's opinion speaks for itself, the appellees do not think that oral argument is necessary. But should argument be scheduled, they request the same amount of time as Bearden.

i

# TABLE OF CONTENTS

Summary of the case and oral argument statement ................................... i

Table of authorities ........................................................................ iii

Introduction ............................................................................... 1

Statement of the issues ................................................................. 4

Statement of the case ................................................................... 5

    I.    Factual background ........................................................... 5

    II.   Procedural background ..................................................... 8

Legal standards ......................................................................... 17

Summary of argument ................................................................ 20

Argument ................................................................................ 22

    I.    The district court did not manifestly abuse its discretion in denying a new trial. ...................................................... 22

        A.   The district court did not manifestly abuse its discretion in finding that consolidation caused no unfair prejudice to Bearden. ............................................................... 22

        B.   The district court did not manifestly abuse discretion in declining to grant Bearden a new trial based on the exclusion of a single piece of cumulative evidence. ................. 27

    II.   The district court did not manifestly abuse its discretion in denying remittitur. .......................................................... 31

Conclusion ............................................................................... 36

Appellate Case: 22-2694    Page: 3    Date Filed: 11/14/2022 Entry ID: 5217483

# TABLE OF AUTHORITIES

## Cases

*Allied Chemical Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980)..................................................................17

*Cisky v. Brady Corp.*,
   1985 WL 351185 (State Ct. Colo. 1985)...............................35

*Confidential v. Los Angeles Unified School District*,
   2013 WL 1398551 (Cal. Super. 2013)....................................35

*CSX Transportation, Inc. v. Hensley*,
   556 U.S. 838 (2009) .............................................................26

*Dindinger v. Allsteel, Inc.*,
   853 F.3d 414 (8th Cir. 2017) ...............................................18

*Eckerberg v. Inter-State Studio & Publishing Co.*,
   860 F.3d 1079 (8th Cir. 2017)......................................*passim*

*EEOC v. HBE Corp.*,
   135 F.3d 543 (8th Cir. 1998) ...............................................18

*Emmenegger v. Bull Moose Tube Co.*,
   324 F.3d 616 (8th Cir. 2003)................................................17

*Flores v. Kwik-Wash Laundries, Inc.*,
   1992 WL 506766 (Tex. Dist. 1992) ......................................35

*Frazier v. Iowa Beef Processors, Inc.*,
   200 F.3d 1190 (8th Cir. 2000) .............................................34

*Glover v. Vest*,
   2016 WL 6394229 (W.D. Okla. Sept. 23, 2016) ..................35

*Griffin v. City of Opa-Locka*,
   261 F.3d 1295 (11th Cir. 2001).............................................35

*Hall v. Hall*,
   138 S. Ct. 1118 (2018) .........................................................18

iii

*Herold v. Burlington North, Inc.*,
    761 F.2d 1241 (8th Cir. 1985) .................................................................34

*Hite v. Vermeer Manufacturing Co.*,
    446 F.3d 858 (8th Cir. 2006) ................................................................ 19

*Horizon Asset Management, Inc. v. H & R Block, Inc.*,
    580 F.3d 755 (8th Cir. 2009) ........................................................... 18, 22

*J.K.J. v. Polk County*,
    960 F.3d 367 (7th Cir. 2020) ........................................................*passim*

*Manus v. American Airlines, Inc.*,
    314 F.3d 968 (8th Cir. 2003) .................................................................35

*Mary Ellen Enterprises v. Camex, Inc.*,
    68 F.3d 1065 (8th Cir. 1995) .................................................................26

*Mason v. Oklahoma Turnpike Authority*,
    182 F.3d 1212 (10th Cir. 1999) ............................................................ 19

*McCabe v. Parker*,
    608 F.3d 1068 (8th Cir. 2010) ........................................................ 34, 35

*Miller v. Huron Regional Medical Center*,
    936 F.3d 841 (8th Cir. 2019) ................................................................ 17

*Ondrisek v. Hoffman*,
    698 F.3d 1020 (8th Cir. 2012) ................................................... 19, 34, 35

*Opper v. United States*,
    348 U.S. 84 (1954) ..............................................................20, 21, 26

*Payne v. Jones*,
    711 F.3d 85 (2d Cir. 2013) ................................................................... 19

*Plaintiff v. EPT Management Co.*,
    2005 WL 6042321 (Ga. Sup. 2005) .......................................................35

*Porchia v. Design Equipment Co.*,
    113 F.3d 877 (8th Cir. 1997) ................................................................ 30

iv

*Rotskoff v. Cooley*,
    438 F.3d 852 (8th Cir. 2006) ..................................................... 33

*Rowe v. Hussmann Corp.*,
    381 F.3d 775 (8th Cir. 2004) ........................................ 19, 32, 34

*Russell v. Anderson*,
    966 F.3d 711 (8th Cir. 2020) ....................................................... 19

*Selk v. Res-Care, Inc.*,
    2009 WL 6412422 (State Ct. N.M. 2009) ................................... 35

*Sindi v. El-Moslimany*,
    896 F.3d 1 (1st Cir. 2018) ........................................................... 33

*United States v. Beckman*,
    787 F.3d 466 (8th Cir. 2015) ..................................................... 33

*United States v. Dennis*,
    625 F.2d 782 (8th Cir. 1980) ..................................................... 29

*United States v. Fast Horse*,
    2012 WL 5334740 (D.S.D. Oct. 26, 2012) ................................. 26

*United States v. Holy Bull*,
    613 F.3d 871 (8th Cir. 2010) ..................................................... 22

*United States v. Joiner*,
    39 F.4th 1003 (8th Cir. 2022) .................................................... 26

*United States v. Jones*,
    728 F.3d 763 (8th Cir. 2013) ..................................................... 30

*United States v. McCarther*,
    596 F.3d 438 (8th Cir. 2010) ................................................ 3, 26

*United States v. Wallace*,
    852 F.3d 778 (8th Cir. 2017) ......................... 3, 18, 21, 28, 29

*United States v. Wang*,
    964 F.2d 811 (8th Cir. 1992) ..................................................... 18

v

*United States v. Zavala,*
427 F.3d 562 (8th Cir.2005) ...................................................................... 33

*V.V. v. Tel-Star Alarms,*
2011 WL 7657731 (Ga. State Ct. 2011) ..................................................... 35

**Other Authorities**

U.S. Bureau of Labor Statistics, CPI Inflation Calculator ....................................... 35

**Rules**

Federal Rule of Appellate Procedure 28 ...................................................... 33

Federal Rule of Evidence 403 .................................................................... 28

Federal Rule of Evidence 415 ...................................................................... 2

Appellate Case: 22-2694    Page: 7    Date Filed: 11/14/2022 Entry ID: 5217483

## INTRODUCTION

Sexual assault is traumatic under any circumstances. But the circumstances here were especially horrific. Four women were forcibly penetrated by the defendant, Edward Bearden, while he was a correctional officer and they were prison inmates. Each experienced a similar pattern of abuse: Bearden began by making crude sexual comments that quickly escalated to physical attacks. He got each woman into a place with no security cameras and forcibly inserted one of his body parts into theirs.

Each woman suffered severe and ongoing psychological trauma as a result. A mental-health expert testified that, for each of them, the trauma will require years of extensive therapy to fully heal. And the reality of prison life—and the power that correctional officers wield over inmates—only compounded their trauma. Each woman had been removed from their natural support system of friends and family with no ability to leave. Before they came forward, each initially stayed silent for fear of being stripped of their family-visitation rights and placed in isolation.

A jury found Bearden responsible for his actions. After the women's cases were consolidated for trial, the jury returned verdicts in favor of each woman, finding that Bearden violated their constitutional rights and that his version of events—that the plaintiffs were colluding—wasn't credible. Because each woman suffered the same basic harm, the jury appropriately awarded each the same damages.

Appellate Case: 22-2694    Page: 8    Date Filed: 11/14/2022 Entry ID: 5217483

Having failed to persuade the jury, Bearden sought a do-over from the district court, asking it to nullify the verdict. He argued that (1) the consolidation of the cases for trial caused him unfair prejudice, (2) the exclusion of a single exhibit violated his substantial rights, and (3) the damages were grossly excessive. In a careful and comprehensive opinion, the district court declined to upset the verdict.

In this Court, Bearden now claims that both the judge and jury transgressed their enormous discretion in discharging their duties. But he cites no cases in support of any of his arguments. Nor does he cite or even discuss the district court's opinion. And he makes no serious effort to show a manifest abuse of discretion as to any issue.

As to consolidation: The court found that the cases were "undoubtedly" fit for consolidation because of their legal and factual overlap and because, even in separate trials, all four women could have testified about their assaults in each trial. App. 234; R. Doc. 224 at 6; *see* Fed. R. Evid. 415. The court thus sensibly concluded that one trial is more efficient than four. It also explained why Bearden's cries of "unfair prejudice"—that "simply seeing Plaintiffs' sitting together in the courtroom influenced the jury," and that the jury was confused—presume that the jury defied its instructions and have no basis in fact. App. 234–35; R. Doc. 224 at 6–7. Although Bearden persists with these theories on appeal, he cites no case analyzing unfair prejudice in a civil trial, much less one supporting him. And this Court has held that,

2

even in a criminal trial, no unfair prejudice occurs when the evidence is the same. *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010).

As to exclusion: The district court took pains to explain why it excluded the sole exhibit at issue, a recording of a phone call between one plaintiff and Bearden. The call's subject matter was uncontested at trial, so the recording was "needlessly cumulative." App. 237; R. Doc. 224 at 9. And if Bearden thought that the recording could somehow impeach the plaintiff's testimony, he could have admitted it into evidence during her cross-examination. He did not. Instead, he tried to use it to improperly bolster his own testimony, which the rules forbid. Because Bearden does not contend otherwise on appeal, he cannot show *any* error, much less manifest error. *See United States v. Wallace*, 852 F.3d 778, 784 (8th Cir. 2017). Regardless, the recording was irrelevant: The *existence* of the call, not its content, is what mattered—that is, that it occurred on a burner phone that Bearden purchased, destroyed, and then lied about having.

As to damages: The district court found that the awards are amply supported by the record, and that the jury reasonably concluded that each plaintiff "suffered the same basic harm" and was entitled to the same award. App. 241–42; R. Doc. 224 at 13–14. The en banc Seventh Circuit came to the same conclusion in upholding multiple identical awards to inmates sexually assaulted by a correctional officer in *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020). And it did so "easily," with all eleven

Appellate Case: 22-2694    Page: 10    Date Filed: 11/14/2022 Entry ID: 5217483

judges agreeing. *Id.* at 376–77. Bearden does not acknowledge that case or provide any reason why this Court should disagree and cast aside its "extreme[] hesitan[ce]" to disturb such a verdict. *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1088 (8th Cir. 2017).

## STATEMENT OF THE ISSUES

**1.** Did the district court manifestly abuse its discretion when it found that consolidation did not unfairly prejudice Bearden, either by allowing the plaintiffs to sit together at trial or because of an unsubstantiated claim of juror confusion?

Apposite cases: *Horizon Asset Mgmt., Inc. v. H & R Block, Inc.,* 580 F.3d 755 (8th Cir. 2009); *EEOC v. HBE Corp.*, 135 F.3d 543 (8th Cir. 1998); *Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065 (8th Cir. 1995); *Opper v. United States*, 348 U.S. 84 (1954).

Apposite rules: Federal Rule of Civil Procedure 42(a) and Federal Rule of Evidence 415(a).

**2.** Did the district court manifestly abuse its discretion in declining to grant Bearden a new trial based on the exclusion of a single piece of cumulative evidence that he failed to properly introduce and that wouldn't have affected the outcome?

Apposite cases: *United States v. Wallace*, 852 F.3d 778 (2017); *Dindinger v. Allsteel, Inc.*, 853 F.3d 414 (8th Cir. 2017); *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980).

Apposite rules: Federal Rules of Evidence 801(d)(1), 608(b), and 403.

Appellate Case: 22-2694     Page: 11     Date Filed: 11/14/2022 Entry ID: 5217483

**3.**     Did the district court manifestly abuse its discretion in finding that the jury's damages awards are rational and declining to judicially revise them?

Apposite cases: *J.K.J. v. Polk Cnty.*, 960 F.3d 367 (7th Cir. 2020); *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079 (8th Cir. 2017); *Ondrisek v. Hoffman*, 698 F.3d 1020 (8th Cir. 2012); *Rowe v. Hussmann Corp.*, 381 F.3d 775 (8th Cir. 2004).

## STATEMENT OF THE CASE

### I.  Factual background

The plaintiffs—Karen Keil, Ashley Zieser, Trenady George, and Lynnsey Betz—are former inmates at the Chillicothe Correctional Center, a women's prison in rural Missouri. Edward Bearden was a correctional officer during their time there.

As a correctional officer, Bearden held considerable power over the inmates. He could report them for technical infractions, Tr. 42–43, which were "really easy" to find, Tr. 426–27. And he was often responsible for escorting them to another part of the prison, sometimes while they were alone. Tr. 686–87; Tr. 758. Some of the places he would take them—like a supply closet where certain inmates had to go to retrieve cleaning supplies, or a property room with uniforms—were outside the view of security cameras, the locations of which he was keenly aware. Tr. 53–54, 61; Tr. 136–39; Tr. 215–18; Tr. 305–09, 314; Tr. 348; Tr. 435–36; Tr. 627–28; Tr. 686.[1]

---

[1] This brief uses the following abbreviations: "R. Doc." refers to the district-court docket in *Keil v. Bearden*, No. 18-cv-6074 (W.D. Mo.). "Tr." refers to the trial transcript. "Br." refers to Bearden's opening appellate brief. And "App." refers to

Bearden took advantage of this, using his position and knowledge of the facility to target each woman for sexual assault. His abuse fit a pattern: He started by making inappropriate sexual comments. Tr. 51; Tr. 123–29; Tr. 208, 226–28; Tr. 351. His verbal abuse then escalated to violent sexual assaults, occurring in small rooms or places where no one could see, and culminating in forcible penetration. Tr. 54–56, 59; Tr. 136–40, 179; Tr. 213–21, 267–68; Tr. 352–54. Each woman suffered physical injuries from the force that he used. Tr. 55–56; Tr. 142; Tr. 214; Tr. 360.

Bearden fully expected that he would be able to get away with it. He knew that the women were "not likely to come forward to report sexual assault by a corrections officer," because "it was highly likely that there would be ramifications" for them if they did. Tr. 433. And indeed, each woman was afraid to report Bearden's assaults because of the power that he wielded, and because they were "petrified of going into the hole"—meaning, administrative segregation—and losing the ability to see their children and other privileges that they had worked hard to obtain. Tr. 235–38; *see* Tr. 56–57; Tr. 130, 141–42; Tr. 355–56, 362–65; *see also* Tr. 428–31; Tr. 511.

So at first, Bearden denied having any inappropriate contact with any of the women. But after two and a half years of denials under oath, he was eventually forced

_____

the joint appendix. In addition, when this brief quotes from a case, it sometimes makes minor non-substantive changes (like removing internal quotation marks, brackets, or ellipses, or changing the initial capitalization of a word). To improve the brief's readability, we do not separately note any such changes.

Appellate Case: 22-2694     Page: 13     Date Filed: 11/14/2022 Entry ID: 5217483

to admit that this wasn't true. Tr. 668–70. After this litigation was filed and he was confronted with evidence to the contrary, Bearden admitted that he had purchased a "burner" phone specifically to give the number to Ms. George and ask that she call him—in direct violation of prison rules. Tr. 667–75; *see* Tr. 634–35. When she didn't do so, Bearden approached her while she was "sitting on the ground and nudged [her] in the back with his knee," and said: "I have not received that phone call yet." Tr. 149. Ms. George interpreted that as a "threat that I better make the telephone call." *Id.* She then decided to give him a call, and they had a short discussion "about her kids." Tr. 676; Tr. 148–49, 153–56, 186–88. Afterward, Bearden used the same burner phone to call a different inmate, telling her to "stay wet." Tr. 679. He then "destroyed the phone," throwing "it out the window of [his] car." Tr. 680–81. When questioned about it under oath, he said that he did not have an "extra cell phone when [he] worked at Chillicothe"—only to later admit that this wasn't true. Tr. 668.

The psychological damage that the assaults have inflicted on each woman has been significant and long-lasting. To this day, each suffers from "night terrors" and severe "anxiety" that has affected their ability to connect with loved ones and interact with people in their daily lives. Tr. 69–72; Tr. 157–61; Tr. 224, 239; Tr. 370–71. These long-term effects, which are "consistent with post-traumatic stress disorder" for each woman, Tr. 513–20, have even hurt their relationships with their children by making

7

it hard for them to show affection through physical acts. Tr. 69–73; Tr. 157, 160; Tr. 239; Tr. 370. It will take "years" of therapy for them to fully heal. Tr. 509–23, 582–83.

## II.    Procedural background

In 2018 and 2019, each of the four women filed a separate case against Bearden for sexually assaulting them while they were incarcerated. They brought their claims under 42 U.S.C. § 1983, seeking monetary damages to remedy his violations of their constitutional right to bodily integrity. App. 1–27, 249–58, 284–93, 319–336; R. Doc 1.

*1. The parties jointly request consolidating the cases for discovery, which the district court grants.* Almost immediately, it became clear that the cases would benefit from consolidation. In 2020, Bearden and the plaintiffs filed a joint motion to consolidate the cases for discovery. R. Doc. 74. "Consolidation is appropriate under [Rule 42(a)]," they explained, because "all four cases involve common questions of law and fact." *Id.* at 2. The sexual assaults "occurred at the same location and at the hands of" the same correctional officer; the parties "are represented by the same counsel"; and the cases "share common issues related to the locations of the alleged assaults, the opportunity, the relevant procedures and protocols at the correctional center, and the elements of the claims asserted." *Id.*

The joint motion further noted that, without consolidation, state employees would have to give the same testimony in all four cases. "All parties believe it would be most efficient if these state employees, some of whom have managerial positions,

8

are deposed only once regarding all four cases to avoid the time and expense of duplicative questioning over four different depositions." *Id.* The parties also stated their joint view that "[j]udicial convenience and economy may be promoted by the consolidation of the actions," and that "the prejudice and confusion of multiple inconsistent adjudications can be avoided through consolidation." *Id.* at 3.

The district court "agree[d] with the parties that these cases pose common questions of law and fact" and consolidated them for discovery. R. Doc. 77 at 1. It found that "judicial economy and efficiency will be promoted" by consolidation because the "witnesses will be deposed only once for the purposes of all cases." *Id.*

*2. The court consolidates the cases for trial, finding no "unfair prejudice."* Following discovery, the plaintiffs sought to consolidate the cases for trial. App. 28; R. Doc. 135. They made the same points as before, while adding that they now also had "the same experts to opine on the system failures and officer opportunity and damages," and making clear that "[a]ll four Plaintiffs will be witnesses in the other women's cases if tried separately, as allowed under Federal Rule of Evidence 415." App. 36–37; R. Doc. 136 at 3–4. The plaintiffs further noted that consolidation would spare them of "the trauma of testifying four times to the same facts of being sexually assaulted." App. 38; R. Doc. 136 at 5.

This time, Bearden opposed. App. 40; R. Doc. 137. He did not deny that, as he'd previously argued, the cases involve substantial factual and legal overlap, or that

9

consolidation at trial would advance judicial efficiency and economy. Instead, he argued that consolidation would cause him "unfair prejudice" because "the four plaintiffs would be seated in the courtroom for the length of the trial," which "risks evoking the jurors' sympathy for these women," and "because a risk exists of confusion to [the] jury in having to ascertain what evidence fits with which plaintiff's allegations." App. 40–42; R. Doc. 137 at 1–3.

The district court rejected his arguments and granted the motion. Because the cases plainly "involve a common question of law or fact," as Rule 42 requires, the court recognized that it had discretion to consolidate them if the "convenience and economy" of a joint trial outweighs "the danger of . . . unfair prejudice." App. 46–47; R. Doc. 139 at 1–2. Applying that discretionary balancing test, the court first found that consolidation "would save significant time and resources" because "much of the testimony at each trial would be duplicative of the testimony at the remaining trials." App. 47; R. Doc. 139 at 2. The court then found that, on the other side of the scale, "the possibility of having the Plaintiffs all sit at the same table is unlikely to make a difference to the jury's sympathies—and will certainly not make a large enough difference to constitute unfair prejudice to Bearden, or outweigh the significant gains to judicial economy from consolidating the trial." *Id.* The court thus concluded that "the judicial economy of consolidating the cases for trial outweighs the potential prejudice to Bearden." *Id.*

***3. The cases go to trial, and the jury finds Bearden liable to each plaintiff.*** The cases went to trial in April 2022. Each plaintiff testified and was cross-examined in turn, and each provided detailed accounts of what happened to them. Tr. 54–59; Tr. 136–40, 179; Tr. 213–21, 267–68; Tr. 352–54. A fifth woman, Teri Dean, testified that she too had been sexually assaulted by Bearden. Although she was not a plaintiff in the trial, she described a similar experience of first receiving harassing comments and then being physically violated. Tr. 303–04, 309–15, 337.

In addition, the jury heard testimony from two experts who corroborated the plaintiffs' testimony. One of them, a former director of the Missouri Department of Corrections, testified about how a correctional officer like Bearden has the means and opportunities to sexually assault prisoners, and why such assaults are unlikely to be reported. Tr. 428–46. The other, a psychiatrist, testified about the emotional and mental damage that each plaintiff has suffered as a result of the assaults. Tr. 513–20.

The jury also had a chance to evaluate Bearden's credibility. He took the stand and "testified that their claims that he engaged in sexual misconduct with them were entirely fabricated." App. 238; R. Doc. 224 at 10; *see* Tr. 684, 687, 692–94. His story was that the women were "all connected" and were conspiring against him. Tr. 29.

Although he denied the plaintiffs' allegations, Bearden admitted during cross-examination that he purchased a "burner" phone for the purpose of having Ms. George call him, and that he gave her the number and asked that she do so. Tr. 668–

Appellate Case: 22-2694   Page: 18   Date Filed: 11/14/2022 Entry ID: 5217483

70, 675–76. He said that they had a conversation "about her kids and her mom," Tr. 676, which was consistent with George's testimony about the call. *See* Tr. 155–56, 186–87. Then the line of inquiry shifted to the other call that Bearden had with the burner phone, in which he told a different inmate to "stay wet." Tr. 677–80. On this topic, Bearden's answers were evasive and unconvincing. He testified that he did not "remember saying that," but he did not deny that he had said it. *Id.*

On redirect, Bearden's counsel then moved to admit a recording of the call that he had with Ms. George. Tr. 696, 707. When the jury was out of the room, the court heard arguments on the admissibility of the recording. Counsel for the plaintiffs objected to its admission because the content of the recording was not disputed and so was "not at issue." Tr. 708. In response, Bearden's counsel said that the recording was relevant to George's testimony that "she made the call because she perceived [Bearden to have previously made] a threat" that she do so. Tr. 709–10. He argued that the recording would show "what her mannerisms were" during the call. Tr. 710.

The district court paused the proceedings to "think about this" issue and take counsel's arguments "under advisement." Tr. 711. After a 30-minute recess during which the judge "review[ed] [her] notes regarding Mr. Bearden's testimony" as to the call and "reviewed the transcript of the call," the court denied the motion. Tr. 711–13. The court explained that Bearden's testimony as to the content of the call—which was not disputed—was "reinforce[d]" and confirmed by the transcript that

Appellate Case: 22-2694     Page: 19     Date Filed: 11/14/2022 Entry ID: 5217483

the court had just reviewed. Tr. 711–13. For that reason, the recording could not be used to contradict his testimony, but only to bolster it, which was "improper." Tr. 711–12.

Although the court found that the recording was inadmissible for that purpose, it clarified that it was "not necessarily saying that [the recording] isn't admissible" for another purpose. Tr. 712. The court noted that Bearden could have moved to admit the recording while cross-examining George, but he "chose not to." Tr. 710–12. After the court's ruling, Bearden did not call George as a defense witness and attempt to introduce the recording through her testimony.

Following closing arguments, the jury was given a separate verdict form for each plaintiff, along with instructions to "evaluate the elements of each Plaintiff's claim separately." App. 236; R. Doc. 224 at 8. The jury returned separate verdicts finding that Bearden was liable to each plaintiff. App. 49–52; R. Doc. 199. The jury awarded each plaintiff $3.5 million in compensatory damages and $1.5 million in punitive damages. *Id.*

### *4. The district court denies Bearden's request for a new trial.*

Bearden moved for a new trial on four grounds. He renewed his challenges to consolidation and to the exclusion of the recording. In addition, he argued that the verdict is not supported by the evidence and that the awards are grossly excessive.

Appellate Case: 22-2694    Page: 20    Date Filed: 11/14/2022 Entry ID: 5217483

In a comprehensive opinion, the district court carefully walked through each of Bearden's arguments and explained why none of them authorized a new trial.

*First*, the court reaffirmed the appropriateness of consolidation. It found that all the reasons that it had given in its pre-trial consolidation order were equally valid post-trial, and confirmed that the "gains in judicial economy from consolidating the trials significantly outweigh[ed] any possible prejudice." App. 235; R. Doc. 224 at 7. The court explained that "it is very unlikely that simply seeing Plaintiffs sitting together in the courtroom influenced the jury." *Id.* And the only specific evidence that Bearden pointed to—that one of the plaintiffs at one point "began crying quietly and excused herself"—showed no "inappropriate[]" behavior. *Id.* Based on its observations at trial, the court found that it was "unlikely that any of Plaintiffs' behavior influenced the outcome of the trial." *Id.* If anything, having the plaintiffs seated together could have lent support to Bearden's defense that they "worked together to fabricate their accusations against him." *Id.*

The court also found that consolidation did not confuse the jury. It noted that, having followed the testimony, "each Plaintiffs' allegations were different from the other Plaintiffs," and each testified and was cross-examined separately. *Id.* Further, the plaintiffs' expert "discussed the impact of the assaults on each Plaintiff's mental state separately," and Bearden "was able to introduce evidence to undermine the credibility of the allegations of specific Plaintiffs." *Id.* His only example of supposed

Appellate Case: 22-2694     Page: 21     Date Filed: 11/14/2022 Entry ID: 5217483

confusion was when the plaintiffs' counsel briefly slipped up in closing argument by confusing one plaintiff's name with another's. But counsel "clarified" that mistake in rebuttal, and the court found that it revealed no "danger of prejudicial confusion." App. 236; R. Doc. 224 at 8. To the contrary, drawing on its firsthand knowledge of the trial, the court found that consolidation did not result "in any significant confusion by the jury." *Id.*

*Second*, the court also adhered to its previous decision to exclude the recording of the call between Bearden and George. The court explained that the issue wasn't the general admissibility of the call, but rather the specific timing of when his counsel tried to introduce it. His counsel could have used the recording "to impeach George" if "a proper foundation" had been laid, or even "re-called George in his case-in-chief and asked her specific questions about the phone call, and, to the extent her answers were inconsistent with the recording, used the recording to impeach her." App. 238; R. Doc. 224 at 10. But Bearden's counsel chose not to. He instead attempted to introduce the recording during Bearden's redirect, which is forbidden by the Federal Rules of Evidence. As the court explained, Bearden and George "agreed as to the basic content of the phone call." *Id.* Bearden "admitted that (1) he provided the cell phone number to George, which was against prison policy; (2) George called him, and he spoke with her; and (3) George's recollection of the subject matter of the conversation was generally correct." App. 237; R. Doc. 224 at 9. So introducing the

call would have been "needlessly cumulative," while using it to rehabilitate Bearden's credibility as to the content of the call—which "had not been attacked"—would have been improper bolstering. *Id.* The court thus explained that it had not erred in excluding the recording. App. 238; R. Doc. 224 at 10.

Moreover, the court found that any error would have been harmless "for numerous reasons." *Id.* For one, Bearden's counsel waived the opportunity to admit the recording through proper means. *Id.* For another, the existence of the call is what mattered, not its content. Given Bearden's denial of any sexual relationship, his "inappropriate personal contact with one of the Plaintiffs suggested a willingness to overstep his bounds in his relationships with female prisoners, regardless of the nature and tone of that contact." *Id.* For still another, the court "reviewed a transcript of the call" and found that "hearing the recording would [not] have significantly aided or changed the jury's understanding of what occurred." App. 238–29; R. Doc. 224 at 10–11.

*Third*, the court easily rejected Bearden's argument that the verdict was against the weight of the evidence. App. 239; R. Doc. 224 at 11. "[A]ll four Plaintiffs offered similar testimony about how [he] approached, groomed, and sexually assaulted them," and the court found that "their testimony was credible and reasonably detailed." App. 240; R. Doc. 224 at 12. Nor were any of Bearden's "documents and other testimony" "especially persuasive." *Id.*

16

*Finally*, the court rejected Bearden's challenge to the damages awards. It noted that "each Plaintiff" suffered "harrowing experiences," including "fear and pain during the assaults, and intense psychological distress and interpersonal dysfunction thereafter." App. 241; R. Doc. 224 at 13. Based on this evidence, which the court too had witnessed, the court found "that the jury appropriately exercised its discretion in awarding $3.5 million in compensatory damages to each Plaintiff." *Id.* Further, the court found it was rational for a jury to give the same award to each plaintiff because "the basic fact underlying their claims is the same: that Defendant sexually assaulted them while they were inmates at Chillicothe." *Id.* And "having suffered the same basic harm, each Plaintiff was entitled to the same compensatory damage award." App. 242; R. Doc. 224 at 14.

## LEGAL STANDARDS

As a general matter, this Court "review[s] the denial of a motion for remittitur or a new trial for a manifest abuse of discretion." *Miller v. Huron Reg'l Med. Ctr.*, 936 F.3d 841, 846 (8th Cir. 2019); *see Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam) (explaining that this authority is "confided almost entirely to the [district court's] discretion"). "To win reversal, the moving party must show that the trial court's decision to deny the motion and let the verdict stand results in a miscarriage of justice." *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 619 (8th Cir. 2003).

More specifically, the following standards apply to the issues on appeal:

17

**Consolidation.** Rule 42(a) authorizes the consolidation of cases that "involve a common question of law or fact." "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). Only if there has been a "clear abuse" of that discretion may this Court reverse. *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998). Further, when the plaintiffs seek to present "similar evidence" on claims that have "common questions of law and fact," this Court has held that is "appropriate to consolidate the[] claims and avoid the inefficiency of separate trials involving related parties, witnesses, and evidence." *Id.* at 551. Consolidation is inappropriate only "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *Id.*; *see also Horizon Asset Mgmt., Inc. v. H & R Block, Inc.,* 580 F.3d 755, 768 (8th Cir. 2009) (affirming consolidation).

**Evidentiary ruling.** A district court "has ample discretion to exclude prior consistent statements that are cumulative accounts of an event" and to subsequently deny a new trial on that ground. *United States v. Wallace*, 852 F.3d 778, 784 (2017). Its decision to do so "should only be overturned if there was a 'clear and prejudicial abuse of discretion.'" *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017). That is because the "trial court is in the best position to determine" whether "an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result." *United States v. Wang*, 964 F.2d 811, 813 (8th Cir. 1992). To reverse, this Court must be convinced that "it is likely that the jury would have been substantially

18

swayed by the wrongly excluded testimony if it had been admitted," thus affecting the trial's "fundamental fairness." *Russell v. Anderson*, 966 F.3d 711, 729 (8th Cir. 2020).

**Remittitur.** Appellate review of the denial of remittitur is doubly deferential. First, "great deference" is owed to the jury's award, which should be reduced "only in rare situations where there is 'plain injustice or a monstrous or shocking result.'" *Ondrisek v. Hoffman*, 698 F.3d 1020, 1027 (8th Cir. 2012). The wide "latitude given to juries" is even greater for "awards for pain and suffering," which are "not easily calculated in economic terms" and so are "committed to the sound discretion of the jury." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004). Great deference is also owed to the district court: "Excessiveness of a verdict" is "a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of witnesses." *Ondrisek*, 698 F.3d at 1027.

Put these layers of deference together, and this Court is "extremely hesitant to overturn a jury verdict which includes damages for pain and suffering," and which has been upheld in full by the district court. *Eckerberg*, 860 F.3d at 1088. The Court must be "certain that the award is contrary to all reason before it orders a remittitur or a new trial." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869–70 (8th Cir. 2006).[2]

---

[2] This case involves federal claims in federal court, so federal law governs the excessiveness question—not state law. *Contra* Br. 18; *see, e.g., Mason v. Okla. Turnpike Auth.*, 182 F.3d 1212, 1214 (10th Cir. 1999); *Payne v. Jones*, 711 F.3d 85, 97 n.8 (2d Cir. 2013).

19

# SUMMARY OF ARGUMENT

**I.A.** Bearden first argues that the district court manifestly abused its discretion in consolidating the cases for trial. But the cases "undoubtedly" involve "common parties, overlapping legal issues, and related factual scenarios," and consolidation saved substantial time and resources. App. 234; R. Doc. 224 at 6. The district court had discretion to find that these benefits outweighed any prejudice to Bearden.

Neither of Bearden's theories of prejudice warrants a new trial. His first theory is that consolidation prejudiced him by allowing the plaintiffs to sit together in court. But defendants who commit criminal acts generally don't receive new trials just because their victims sat together in court. And here, the district court found that it is "very unlikely" that the plaintiffs' presence at trial influenced the verdict, and that "any possible prejudice" was "significantly outweigh[ed]" by the benefits of consolidation. App. 235; R. Doc. 224 at 7. That finding was well within the court's discretion.

Bearden's second theory of prejudice—jury confusion—is no more persuasive. The district court found no evidence of "any significant confusion by the jury," App. 8, and Bearden doesn't point to any. Simply put, "[t]here is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial." *Opper v. United States*, 348 U.S. 84, 95 (1954). Bearden's argument to the contrary

Appellate Case: 22-2694    Page: 27    Date Filed: 11/14/2022 Entry ID: 5217483

"amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict." *Id.*

**B.** Bearden next argues that the district court manifestly abused its discretion by excluding the recording of his call with Ms. George. He says that it was essential for the jury to hear the call's tone and content. But as the district court explained, there was no dispute about the call's content, so the court had "ample discretion" to exclude the recording as "needlessly cumulative." *Wallace*, 852 F.3d at 784. Moreover, although Bearden suggests that the tone of the call somehow undermined George's testimony, he "chose not to" introduce the recording for that purpose during her cross-examination. Tr. 712. His counsel instead sought to introduce the recording during Bearden's redirect, even though his testimony had not been attacked in that respect. As a result, the district court had discretion to exclude the recording on the ground that it constituted improper bolstering. And exclusion of the recording "did not influence the outcome" regardless. App. 238; R. Doc. 224 at 10.

**II.** Finally, Bearden argues that the court manifestly abused its discretion in declining to reduce the jury's damages awards. He contends that the awards are each grossly excessive simply because they are the same for each plaintiff. But the en banc Seventh Circuit unanimously rejected a similar argument in a similar case involving similar facts. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 376–77 (7th Cir. 2020) (en banc). The district court did not manifestly abuse its discretion by reaching the same conclusion.

Appellate Case: 22-2694    Page: 28    Date Filed: 11/14/2022 Entry ID: 5217483

# ARGUMENT

## I. The district court did not manifestly abuse its discretion in denying a new trial.

### A. The district court did not manifestly abuse its discretion in finding that consolidation caused no unfair prejudice to Bearden.

Bearden's lead argument (at 11–15) is that the district court manifestly abused its discretion in consolidating the cases for trial. In making this argument, Bearden does not dispute that "[c]onsolidation is usually favored when two cases involve 'common parties, overlapping legal issues, and related factual scenarios.'" App. 234; R. Doc. 224 at 6 (quoting *Horizon*, 580 F.3d at 768). Nor does he dispute the district court's conclusion that—as he argued below—this was "undoubtedly" true here. *Id.*; *see* R. Doc. 74 at 2–3 (joint motion to consolidate discovery). Indeed, "all Plaintiffs were prisoners at the same institution and suffered the same sort of injury at the hands of the same Defendant in the same time period." App. 234; R. Doc. 224 at 6. And as Bearden himself concedes, even if "each case [had] gone to trial separately, each of the Plaintiffs would have testified at one another's trials about the[ir] sexual assaults," as permitted by Federal Rule of Evidence 415. *Id.*; *see* Br. 12 (making this concession); *United States v. Holy Bull*, 613 F.3d 871, 873–74 (8th Cir. 2010) ("The testimony of the prior victim [was admissible because it] revealed a pattern of abuse quite similar to the abuse alleged.").

Appellate Case: 22-2694    Page: 29    Date Filed: 11/14/2022 Entry ID: 5217483

Instead, Bearden argues that this case merits an exception to the general rule favoring consolidation in such circumstances. His position is that the district court was required to hold four separate trials—and that his victims were required to testify four separate times—*despite* the clear benefits of consolidation. Doing otherwise, he says, caused him "unfair prejudice." Br. 12. But Bearden cites no cases analyzing this standard, and his two theories of unfair prejudice were both soundly rejected by the district court for reasons that he does not confront anywhere in his brief.

### 1. *Unfair-prejudice theory #1: Plaintiffs' presence in the courtroom.*

Bearden's first theory is that the plaintiffs' mere presence in the courtroom created an "overly sympathetic scene." *Id.* He offers little in the way of specifics. With no elaboration or citation to the record, he asserts that the plaintiffs "comforted one another in front of the jury," as if this alone would mandate a new trial. *Id.* But he did not make any objection on this ground at trial. And the district court expressly found that it was "very unlikely that simply seeing Plaintiffs sitting together in the courtroom influenced the jury," and that the obvious "gains in judicial economy from consolidating the trials significantly outweigh[ed] any possible prejudice." App. 235; R. Doc. 224 at 7. That was especially true, as the court explained in its consolidation order, because the plaintiffs would have been present to "testify on one another's behalf" even if the cases were not consolidated. App. 47; R. Doc. 139 at 2. The marginal effect of having them "sit at the same table" was "unlikely to make"

Appellate Case: 22-2694    Page: 30    Date Filed: 11/14/2022 Entry ID: 5217483

*any* "difference to the jury's sympathies"—and "certainly not . . . a large enough difference to constitute unfair prejudice" or to "outweigh the significant gains in judicial economy from consolidating the trial." *Id.*

Further, the district court noted that Bearden's defense at trial "was that Plaintiffs worked together to fabricate their accusations against him." App. 235; R. Doc. 224 at 7. As his counsel put it in the opening: "Those aren't four strangers sitting there, ladies and gentlemen. In a prison of over 1400 offenders, they're all connected. They all know each other." Tr. 29. Given this defense, the court explained that consolidation, if it had any effect on the jury, was "a double-edged sword which could have benefitted either party." App. 235; R. Doc. 224 at 7. "[S]eeing the Plaintiffs together could have made [Bearden's defense] more credible to the jury," and if he had "successfully impeached any one of the Plaintiffs, the jury might have been less willing to believe the other Plaintiffs." *Id.* Bearden's failure to do so does not somehow now entitle him to a new trial.

Bearden points to a single specific example of supposed prejudice on this theory (at 12): that one plaintiff began crying during expert testimony. But the district judge addressed this argument too, drawing on her personal recollection of the events at trial: "As the Court recalls, Zieser began crying quietly and excused herself for a period of time during [the expert's] testimony. The Court does not believe any of the Plaintiffs behaved inappropriately, and finds it unlikely that any of Plaintiffs'

24

behavior influenced the outcome of the trial." App. 235; R. Doc. 224 at 7. Bearden entirely ignores this finding, but it is entitled to great deference and should not be disturbed on appeal.

Bearden also ignores his own counsel's response to the court's handling of this issue at trial. After the court proposed having Ms. Zieser temporarily "step out" of the courtroom, his counsel gave no indication that this solution was inadequate or that the proceeding had been tainted. To the contrary, counsel confirmed: "I'm fine with that." Tr. 519. Having done so, Bearden cannot now claim a right to a mulligan.

**2. *Unfair-prejudice theory #2: Juror confusion.*** Bearden's other theory of unfair prejudice is that consolidating the cases confused the jury. He maintains that consolidation made it impossible for the jury to know "what allegations fit with which plaintiff and which defenses fit with which allegations." Br. 13. But as he admits, the plaintiffs "all testified about their individual allegations," and they were each cross-examined about their individual testimony. *Id.* The jury heard testimony from just eleven witnesses in total—all of whom would have testified even if the cases were tried separately. And the jointly submitted "jury instructions expressly provided that the jury should evaluate the elements of each Plaintiff's claim separately," while "the Court provided the jury with separate verdict forms for each Plaintiff." App. 235; R. Doc. 224 at 7; *see* App. 66; R. Doc. 215 at 3 ("You must assess these elements separately for each Plaintiff.").

The district court did not manifestly abuse its discretion in declining to find "any significant confusion by the jury" on these facts. App. 236; R. Doc. 224 at 8; *see Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1073 (8th Cir. 1995) (finding no abuse of discretion in ordering consolidation where the jury instructions and "verdict form[s] clearly differentiated between" separate claims). Our legal system "relies upon the ability of a jury to follow instructions," and courts must presume that it does so. *Opper*, 348 U.S. at 95; *see CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions. Jurors routinely serve as impartial factfinders in cases that involve sensitive, even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions.").

Here, "[t]here is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial." *Opper*, 348 U.S. at 95. "To say that the jury might have been confused," as Bearden does, "amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict." *Id.* It is not a basis for finding manifest error.[3]

---

[3] Even in criminal cases, this Court has rejected assertions of confusion where the jury was properly instructed. *See United States v. Joiner*, 39 F.4th 1003, 1011 (8th Cir. 2022) ("Joiner has shown no juror confusion when the instructions accurately detailed the charged offense," and "the jury presumably followed those instructions."). In that context, the Court has also held that "no prejudice results from the refusal to sever when evidence of one charge would be admissible in a separate trial on the other." *McCarther*, 596 F.3d at 442; *see also United States v. Fast Horse*, 2012 WL 5334740, at *2

26

Bearden provides no reason for a different outcome here. He seizes on a stray remark from plaintiffs' counsel's closing (at 13), in which she inadvertently used one plaintiff's name instead of another's. The district court, however, did "not believe that [this] illustrates a high danger of prejudicial confusion," particularly because counsel "admitted the error and clarified the issue in her rebuttal." App. 236; R. Doc. 224 at 8. Bearden also asserts (at 13) that "[t]he jury was unable to make an individual determination of liability in each case." But that is simply wrong. Again, the jury was instructed to make individual liability determinations for each plaintiff, and it did so on separate verdict forms. Even if the jury awarded each plaintiff the same amount in damages, that does not demonstrate confusion. Rather, as we discuss in Part II, it shows that the jury carefully reviewed the evidence and reasonably concluded that the basic harm suffered by each plaintiff was the same: intense, ongoing psychological trauma.

## B. The district court did not manifestly abuse discretion in declining to grant Bearden a new trial based on the exclusion of a single piece of cumulative evidence.

Bearden's next bid for manifest error is based on the district court's exclusion of the recording of his phone call with Ms. George (an exhibit that wasn't even on his exhibit list). He says that this exclusion mandates a new trial because the jury did

---

(D.S.D. Oct. 26, 2012) (rejecting argument that charges of sexual assault against different victims must be tried separately to avoid prejudice).

not hear the call's "content" and "tone," which affected his substantial rights. Br. 17. This argument is incorrect for at least three reasons—all of which the district court discussed in its opinion, and none of which Bearden confronts in his brief.

*First*, the "content" of the call was not disputed at trial. George and Bearden both testified that Bearden "told her to call" and that they talked about "her kids" and her plans after prison. Tr. 675–76; *see* Tr. 146–48, 154, 156. The only difference is that George also testified about why she eventually placed the call: because Bearden had told her that he had "not received that phone call yet," which she interpreted as "a threat that I better make the telephone call." Tr. 149. Given that the call's content was "uncontested," App. 237; R. Doc. 224 at 9, the district court had "ample discretion" to exclude the recording as "needlessly cumulative." *See Wallace*, 852 F.3d at 784 (affirming exclusion of criminal defendant's taped statement as needlessly cumulative despite her argument that it "would have given the jury the opportunity to see her demeanor, body language, and mannerisms"); Fed. R. Evid. 403.

*Second*, if Bearden believed that the recording undercut George's testimony in some way, his counsel could have sought to use the recording to impeach her testimony during her cross-examination. Yet "he chose not to." Tr. 712. His counsel instead waited until Bearden's redirect examination, Tr. 707–12—even though the credibility of Bearden's testimony on the content of the call "had not been attacked," App. 237; R. Doc. 224 at 9; *see* Tr. 676. For that reason, the district court concluded

28

that admitting the recording into evidence on redirect would have constituted "improper bolstering" of Bearden's testimony, Tr. 712, which Rule 801(d)(1) "does not allow." App. 236–38; R. Doc. 224 at 8–10; *see* Fed. R. Evid. 801(d)(1); *Wallace*, 852 F.3d at 784 ("A court . . . has ample discretion to exclude prior consistent statements that are cumulative accounts of an event."); *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980) ("A prior consistent statement may not be introduced . . . simply to bolster the testimony of the witness at trial.").

On appeal, Bearden does not refute any of this reasoning—or even assert that it is incorrect. Although he begins by saying that "[t]he error here was not harmless" (a point we take up next), he never establishes the existence of any "error" in the first place. Br. 15. He concedes that "he could have" sought to play the recording during Ms. George's cross-examination, but he claims that he "did not need to" do so until the call "became a major focus of cross-examination during [his] case-in-chief." *Id.* What made the call a focus of cross-examination, however, was its *existence*—not its content. Bearden admitted that he (1) purchased a burner phone so that he could ask George to call him, in violation of prison rules, (2) destroyed the phone not long after she called, and (3) initially lied about the phone under oath, stating that he never "had an extra cell phone when [he] worked at Chillicothe." Tr. 667–84. He only admitted the lie after he was caught. Tr. 668–70, 682. While on the stand, Bearden described the content of the call in just a single sentence, Tr. 676, and the credibility

29

of his description was not challenged during cross-examination. So the fact remains: nothing happened during Bearden's cross-examination that would provide a proper justification for admitting the recording into evidence at that point.

In any event, if Bearden really wanted the jury to hear the recording, there was still a path available to him after he testified. He "could have re-called [George] in his case-in-chief and asked her specific questions about the phone call, and, to the extent her answers were inconsistent with the recording, used the recording to impeach her." App. 238; R. Doc. 224 at 10. As the district court pointed out: "This would not have violated Rule 801(d)(1), which expressly provides that a witness can be cross-examined on specific instances of untruthfulness." *Id.* But Bearden declined to do so.

*Third*, the exclusion of this evidence "did not influence the outcome." *Id.* The evidence was cumulative, making any error harmless. *United States v. Jones*, 728 F.3d 763, 767 (8th Cir. 2013); *see Porchia v. Design Equip. Co.*, 113 F.3d 877, 881 (8th Cir. 1997) ("Error which might arise from the exclusion of evidence is harmless where the same facts are presented to the jury through other evidence."). Not only that, but the district court, "having reviewed a transcript of the call," did "not believe that hearing the recording would have significantly aided or changed the jury's understanding of what occurred." App. 238–39; R. Doc. 224 at 10–11. Again, the call damaged Bearden's case not because of its content or tone, but simply because it happened.

Bearden "did not testify that he had a consensual sexual relationship" with any of the plaintiffs; he testified that their claims were "entirely fabricated." App. 238; R. Doc. 224 10. As the district court explained, "the mere fact that [he] engaged in inappropriate personal contact with one of the Plaintiffs suggested a willingness to overstep his bounds in his relationships with female prisoners, regardless of the nature and tone of that contact." *Id.* The court's handling of this issue, like all issues in the case, shows considerable care and thoughtfulness. It is a commendable exercise of discretion—not a manifest abuse of it.

## II. The district court did not manifestly abuse its discretion in denying remittitur.

Bearden's final argument (at 18–19) is that the district court manifestly abused its discretion in declining to reduce the jury's damages awards. His argument is limited to a theory that the awards are "grossly excessive" simply because they are the same for each plaintiff. Br. 18–19. But he cites no cases in support of this illogical argument. And the most analogous case in fact squarely rejects it.

Two years ago, a correctional officer made a similar argument to the en banc Seventh Circuit. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367 (7th Cir. 2020) (en banc). That officer, like Bearden, contended that a total award of $5.75 million for each inmate that he sexually assaulted was "problematic because the jury gave the same amounts" to each plaintiff despite their different experiences. *Id.* at 376. Writing for the en banc Court (in an opinion joined by then-Judge Barrett), Judge Scudder "easily" rejected

Appellate Case: 22-2694     Page: 38     Date Filed: 11/14/2022 Entry ID: 5217483

this argument. *Id.* at 377. "To be sure," he explained, "the sexual abuse had unique effects" on each inmate, and each had "suffered their own personal tragedies." *Id.* at 376. "But that does not mean that they necessitated different compensatory damages amounts, particularly given the psychology expert's recommendation of identical courses of treatment" for each plaintiff. *Id.* "Nor was the jury's punitive damages award [of $3.75 million per plaintiff] so great as to be unreasonable or outside the bounds of due process." *Id.* The Seventh Circuit thus upheld the full $5.75-million damages award for each plaintiff—a holding with which all eleven judges agreed. *See id.* at 386 (Easterbrook, J., dissenting) (agreeing on this point and dissenting on a separate question of municipal liability); *id.* at 390 n.1 (Brennan, J., dissenting) (same).

The district court below did not manifestly abuse its discretion by reaching the same conclusion and declining to override the wide "latitude given to juries" to put a dollar amount on pain and suffering. *Rowe*, 381 F.3d at 783. The court reviewed the testimony and explained why the jury did not act unreasonably in awarding equal damages. "While there were differences in the details of what Plaintiffs experienced, the basic fact underlying their claims is the same: that Defendant sexually assaulted them while they were inmates at Chillicothe." App. 241; R. Doc. 224 at 13. And the basic harm inflicted by the assaults was also the same: "intense psychological distress and interpersonal dysfunction," manifesting itself in severe anxiety and PTSD. *Id.*; *see* Tr. 69–73, 157–63, 223, 239, 369–73, 512–23. A mental-health expert "also testified

32

about the long-term, irrevocable effects of suffering sexual assault by a corrections officer in a prison environment," App. 241; R. Doc. 224 at 13, telling the jury that the trauma experienced by each plaintiff would require "years" of extensive therapy. Tr. 509–23, 582–83; *see Eckerberg*, 860 F.3d at 1088 ("The jury was entitled to determine what weight, if any, to give any of the expert testimony."). For that reason, the court found that the "jury could reasonably have concluded that, having suffered the same basic harm, each Plaintiff was entitled to the same compensatory damage award." App. 242; R. Doc. 224 at 14. Bearden offers no response.

Nor does Bearden make any other challenge to the damages awards. Although he argued below that the awards are independently excessive, he now abandons this argument on appeal. Beyond his equal-awards theory of excessiveness, he "makes no developed argument that the damages awarded on this claim are excessive," so this Court should "treat any such argument as waived." *Sindi v. El-Moslimany*, 896 F.3d 1, 23 (1st Cir. 2018); *see United States v. Beckman*, 787 F.3d 466, 479–80 (8th Cir. 2015) (finding waiver where appellant failed to "adequately develop an argument" beyond "conclusively stating" error); *Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (same); *United States v. Zavala*, 427 F.3d 562, 564 n.1 (8th Cir.2005) (same); Fed. R. App. P. 28(a)(8)(A).

At any rate, Bearden is right to abandon the argument. As the district court noted in rejecting the argument below, "awards relating to a plaintiff's alleged pain,

Appellate Case: 22-2694     Page: 40     Date Filed: 11/14/2022 Entry ID: 5217483

suffering, and mental anguish are 'highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms.'" App. 241; R. Doc. 224 at 13 (quoting *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000)). The district court found that "the jury appropriately exercised its discretion" here because the plaintiffs each suffered "harrowing experiences" of sexual assault by a prison official, causing them "intense," "long-term," and "irrevocable" "psychological distress and interpersonal dysfunction." *Id.* That is exactly the kind of grave "psychic injury" that "is difficult to quantify" and hence is "committed to the sound discretion of the jury." *Rowe*, 381 F.3d at 783; *see Eckerberg*, 860 F.3d at 1088 ("[T]here is no precise or exact measuring stick for calculating general damages for pain and suffering," and "exact compensation for pain and suffering is impossible."). The district court did not manifestly abuse its discretion by recognizing as much.

Nor are the awards out of step with other cases. This Court has emphasized that "comparisons to other jury verdicts are often not particularly helpful" where, as here, damages are awarded for pain and suffering caused by "particularly egregious" conduct. *McCabe v. Parker*, 608 F.3d 1068, 1080 (8th Cir. 2010); *see, e.g.*, *Herold v. Burlington N., Inc.*, 761 F.2d 1241, 1248 (8th Cir. 1985); *Ondrisek*, 698 F.3d at 1027 (rejecting comparisons to "cases with lesser verdicts" in upholding pain-and-suffering award). But for what it is worth, sexual assaults by government officials often result in awards

34

that exceed the amounts awarded here. *See, e.g.*, *Glover v. Vest*, No. 14-936, 2016 WL 6394229 (W.D. Okla. Sept. 23, 2016) ($6.5 million compensatory-damages awarded against jail official in sexual-assault case, with remittitur denied, R. Doc. 224); *J.K.J.*, 960 F.3d at 375–76 (upholding $5.75 million in total damages per plaintiff in case of prison sexual assault by correctional officer); *see also, e.g.*, *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315–16 (11th Cir. 2001) (upholding compensatory-damages award of $3.38 million in today's dollars—the relevant comparator, *McCabe*, 608 F.3d at 1081 n.13—in sexual-assault case against city official); U.S. Bureau of Labor Statistics, CPI Inflation Calculator https://perma.cc/548R-YA3C ($2 million in March 2020 equals $3.38 million in April 2022).[4] Further, pain and suffering for traumatic experiences have likewise generated similar awards in this Circuit. *See, e.g.*, *Ondrisek*, 698 F.3d at 1027 (upholding compensatory-damages award of $3.84 million in today's dollars); *Manus v. Am. Airlines, Inc.*, 314 F.3d 968, 974 (8th Cir. 2003) (upholding compensatory-damages award of about $3.3 million in today's dollars).

---

[4] The same is true of jury verdicts in state-court cases involving sexual assault or harassment, even without adjusting for inflation. *See, e.g.*, *Confidential v. Los Angeles Unified Sch. Dist.*, 2013 WL 1398551 (Cal. Super. 2013) ($23 million); *Selk v. Res-Care, Inc.*, 2009 WL 6412422 (State Ct. N.M. 2009) ($15.5 million after remittitur); *Plaintiff v. EPT Mgmt. Co.*, 2005 WL 6042321 (Ga. Sup. 2005) ($9 million); *V.V. v. Tel-Star Alarms*, 2011 WL 7657731 (Ga. State Ct. 2011) ($8.64 million); *Flores v. Kwik-Wash Laundries, Inc.*, 1992 WL 506766 (Tex. Dist. 1992) ($6.8 million); *Cisky v. Brady Corp.*, 1985 WL 351185 (State Ct. Colo. 1985) ($6.42 million).

Appellate Case: 22-2694     Page: 42     Date Filed: 11/14/2022 Entry ID: 5217483

In short, neither the jury nor the district court went anywhere near the bounds of their broad discretion, let alone beyond it. This Court is "extremely hesitant to overturn a jury verdict which includes damages for pain and suffering," *Eckerberg*, 860 F.3d at 1088, and this case calls for no exception. The jury found that Bearden committed violent sexual assault and forcibly penetrated each plaintiff under circumstances when it was maximally harmful to them: when they were in state custody—with no way to avoid him, no access to any support network, and fearful that if they spoke up they'd lose the ability to visit their children. The jury's awards should be upheld in full.

## CONCLUSION

Because the district court did not manifestly abuse its discretion in denying a new trial and remittitur, this Court should affirm the district court's judgment in full.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
jon@guptawessler.com

JESSIE GARLAND (*8th Cir. admission pending*)
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336

36

JOHN J. AMMANN
SUSAN W. MCGRAUGH
BRENDAN D. ROEDIGER
ST. LOUIS UNIVERSITY SCHOOL OF LAW
100 N. Tucker Boulevard, Suite 704
Saint Louis, MO 63101

JENIFER C. SNOW
LAW OFFICE OF JOAN M. SWARTZ
3348 Greenwood Boulevard
Saint Louis, MO 63143

November 10, 2022                    *Counsel for Plaintiffs-Appellees*

37

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 9,421 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Baskerville font.

November 10, 2022

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, I electronically filed the foregoing corrected brief with the Clerk of the Court for the U.S. Court of Appeals for the Eighth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor